Hulbert MUNDY and Nancy Mundy, Appellants–Plaintiffs,

v.

Louis ANGELICCHIO, M.D., Appellee–Defendant.

No. 73A05–9302–CV00059 [1].

Court of Appeals of Indiana, First District.

Nov. 22, 1993.

---

**1.** This case was diverted to this office on October 1, 1993, by direction of the Chief Judge.

Patrick W. Harrison, Beck & Harrison, Columbus, for appellants-plaintiffs.

Karl M. Koons, III, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee-defendant.

BAKER, Judge.

Appellant-plaintiffs Hulbert and Nancy Mundy appeal from a jury verdict in favor of Louis Angelicchio, M.D., in a medical malpractice action. We affirm.

### ISSUES

The Mundys raise several issues which we consolidate and restate as:

I. Whether the trial court erred in finding two physicians unavailable for trial so as to allow their depositions to be read to the jury in lieu of live testimony.

II. Whether the trial court erred in admitting Dr. Hastings' deposition statements that Dr. Angelicchio was not negligent.

III. Whether the trial court erred in refusing to allow the chairman of the medical review panel to testify or to allow his memorandum to be read to the jury.

*FACTS*

In March 1987, Nancy Mundy's family physician referred her to Dr. Angelicchio for pain in her right hand and wrist. Dr. Angelicchio diagnosed Nancy's problem as carpal tunnel syndrome, discussed Nancy's options, and then recommended surgery to release the carpal ligament. Dr. Angelicchio informed Nancy of the possible risks and complications of the surgery, including possible damage to the median nerve. The parties agree that carpal tunnel release surgery was an appropriate recommendation and that injury to the median nerve is a commonly recognized risk of this surgery. During the surgery, Nancy's median nerve was lacerated in an oblique or diagonal manner approximately ⅔ of the way through proximal to the severed carpal ligament.

Pursuant to the Indiana Medical Malpractice Act,[2] the Mundys filed a proposed complaint with the Indiana Department of Insurance, which administers the medical review panel process. A medical review panel (MRP) was established to evaluate the Mundys' case. The MRP consisted of three physicians, John Crane, M.D., Joseph C. Randolph, M.D., and Robert T. Clayton, M.D., and one attorney, Kent Frandsen, who served as the non-voting chairman. The MRP unanimously concluded that in its expert opinion the evidence did not support the conclusion that Dr. Angelicchio failed to meet the applicable standard of care as charged in the Mundys' proposed complaint. The MRP filed its opinion with the Indiana Department of Insurance on April 1, 1991. Dr. Hill Hastings, Nancy's subsequent treating orthopedic surgeon, was deposed on October 3, 1990. Dr. Hastings stated in his deposition that (1) he asked other physicians how often such an injury

occurs, (2) in his opinion Dr. Angelicchio was not negligent, and (3) Nancy's injury was a severe complication of the surgery.

On April 5, 1991, the Mundys filed a complaint with the trial court. Prior to trial, Dr. Angelicchio designated deposition testimony of Dr. Hastings (taken on October 3, 1990), Dr. Crane (taken on November 17, 1992), and Dr. Randolph (taken September 23, 1991) for use at trial. On November 12, 1992, Dr. Angelicchio notified the Mundys that Dr. Crane's deposition would be taken for the purposes of preserving his testimony for trial. Dr. Crane stated in his deposition that he would be unavailable for trial due to scheduled surgery and patient office appointments. On November 25, 1992, the Mundys objected to the use of Drs. Crane's and Hastings' depositions. Dr. Angelicchio responded by filing an application to the court to allow use of the depositions at trial, pursuant to Ind.Trial Rule 32(A)(3) and an affidavit from Dr. Hastings attesting to his unavailability.

The trial court found both Dr. Crane and Dr. Hastings were unavailable for trial and allowed their depositions to be submitted in lieu of live testimony. At the trial commencing on December 1, 1992, the Mundys objected to a portion of Dr. Hastings' testimony, claiming that his answer was based on hearsay and constituted an impermissible legal conclusion. Dr. Angelicchio argued that the Mundys' objection went to the form of the question and that they had thus waived any error. The court allowed the challenged statements to be read to the jury. The trial court sustained Dr. Angelicchio's objections to testimony of MRP Chairman Frandsen and to the admission of notes the chairman took during the MRP's deliberations. On December 2, 1992, a jury found in favor of Dr. Angelicchio. The Mundys now appeal.

*DECISION AND DISCUSSION*

*I. Standard of Review*

■ The Mundys raise several issues challenging the trial court's decisions to

2. IND.CODE 16–9.5–1–1 (1992).

admit or exclude evidence. Whether to admit or exclude evidence is a determination entrusted to the sound discretion of the trial court. *Eversole v. Consolidated Rail Corp.* (1990), Ind.App., 551 N.E.2d 846, 854, *trans. denied.* We will reverse the trial court's decision to admit evidence for an abuse of discretion only when it is clearly erroneous and against the logic and effect of the facts and circumstances or the reasonable inferences to be drawn therefrom. *Id.* Regardless of the objection made at trial, if the trial court's exclusion of evidence is supportable, we cannot say the trial court abused its discretion. *Fendley v. Ford* (1984), Ind.App., 458 N.E.2d 1167, 1169.

*II. Witnesses Unavailable For Trial*

■ The Mundys first contend the trial court erred in allowing the depositions of Dr. Hastings [3] and Dr. Crane because they were available for trial.

Ind.Trial Rule 32(A) provides in relevant part:

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

. . . . .

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

■ Determination of whether an exceptional circumstance exists justifying the use of deposition testimony in lieu of live witnesses lies within the sound discretion of the trial court.[4] *Cooper v. Indiana Gas & Water Co.* (1977), 173 Ind.App. 47, 362 N.E.2d 191; *see also Archem, Inc. v. Simo* (1990), Ind.App., 549 N.E.2d 1054, 1058 (T.R. 32(A)(3)(e)), *trans. denied, cert. denied,* 498 U.S. 1076, 111 S.Ct. 944, 112 L.Ed.2d 1032. In addition, we will not reverse a decision within the trial court's discretion absent a showing of prejudice. *Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 121.

Here, the trial court had before it the following on which it could base its findings that Dr. Hastings and Dr. Crane were unavailable: (1) the November 25, 1992 letter Dr. Angelicchio sent to the Mundys notifying them that Dr. Crane's deposition was being taken to preserve his testimony for trial, (2) Dr. Crane's statements in his November deposition [5] that he had surgery and patient appointments scheduled for the week of December 1 and that he would need two months notice if required to be at trial, (3) Dr. Hastings' affidavit that he was unable to testify at trial because of scheduled surgery and patient appointments, and (4) the application and notice to use the

---

**3.** The Mundys also claim that Dr. Hastings' deposition was former testimony and not a deposition because it was taken when their proposed complaint was before the MRP; and therefore, the Ind.Trial Rules do not apply and thus they did not waive any error by not objecting during the deposition. Appellants' Brief at 16–17. We disagree.

Dr. Hastings' deposition was not former testimony because it was not given at a former judicial proceeding. Furthermore, if this were former testimony, it would have been admissible under the former testimony exception of the hearsay rule. Former testimony is admissible if: (1) the testimony was given at a formal judicial proceeding under oath, (2) the party against whom the former testimony is offered had an opportunity to cross-examine the witness at the former proceeding, and (3) the witness is presently unavailable. *Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496, 506.

**4.** We decline the Mundys' request to define "exceptional circumstances." Reply Brief at 16–17. What constitutes an exceptional circumstance is a fact sensitive question which lies within the sound discretion of the trial court.

**5.** The Mundys incorrectly state that Indiana law requires that the reasons for a witness' inability to testify at trial be contained in the deposition itself. Appellant's Brief at 20. This is an absurd proposition since the reasons a witness is unavailable often do not arise until after a deposition is taken and because the key period for determining whether a witness is unavailable is when the witness' deposition is offered at trial. Indiana law does provide, however, that the reasons for a witness' inability to testify at trial need not be presented to the trial court outside of the deposition itself. T.R. 32(A)(3)(e); *Cooper v. Indiana Gas & Water Co.* (1977), 173 Ind.App. 47, 362 N.E.2d 191.

depositions filed by Dr. Angelicchio before trial.

Less pressing and important reasons than essential surgery and necessary medical treatment have been held to be exceptional as to permit the use of deposition testimony. *See Cooper*, 362 N.E.2d at 193 (sole proprietor of business unable to obtain a part-time replacement; grandmother unable to find another babysitter). The trial court did not abuse its discretion in finding Dr. Hastings and Dr. Crane unavailable.[6]

■ In addition, the Mundys did not prove they were prejudiced by use of the depositions. Dr. Hastings and Dr. Crane both testified that Dr. Angelicchio was not negligent and did not fall below the applicable standard of care. This is what the MRP stated in its official opinion, which was already in evidence. The depositions of Dr. Hastings and Dr. Crane were not prejudicial but merely cumulative. The trial court properly allowed the use of the depositions in lieu of testimony at trial.

## III. Dr. Hastings' Deposition Testimony

In addition to alleging Dr. Hastings' deposition should not have been admitted at all, the Mundys specifically contend that the trial court erroneously admitted the portion of Dr. Hastings' deposition in which he stated that (1) he asked other physicians how often this injury occurs, (2) in his opinion Dr. Angelicchio was not negligent, and (3) Nancy's nerve injury was an unfortunate severe complication. The Mundys present three different arguments to support their contention. We will address each claim separately.

### A. Waiver

■ Dr. Angelicchio maintains that any alleged errors in admitting Dr. Hastings' testimony were waived. The Mundys contend that the Indiana trial rules do not apply to depositions taken while a proposed claim is before a MRP and thus they did not waive any error by failing to object to Dr. Hastings' questions and answers during his deposition.

The Mundys' argument fails. The Indiana trial rules do apply to depositions. T.R. 32(D)(3)(b) provides:

Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless reasonable objection thereto is made at the taking of the deposition.[7]

If Dr. Hastings' statements were impermissible legal conclusions then the Mundys waived any error by failing to object to the form of the question and answer when Dr. Hastings' deposition was taken. The error would have been in the form of the question and answer and could have been easily

---

6. Furthermore, we reject the Mundys' claim that the trial court treated Dr. Hastings and Dr. Crane as members of a "pampered class" by erroneously finding them unavailable. The Mundys' argument that claims by deponents that they may not be able to find another babysitter or a part-time business replacement when it is time for trial are sufficient exceptional circumstances but that non-fungible physicians performing essential surgery and medical assistance to sick and needy patients is less important and merely an inconvenience to trial is insulting to this court, medical care providers, and more importantly, to patients.

Some Indiana counties provide in their local rules that physicians are always unavailable, unless an objection is made prior to the taking of the deposition. For instance, Monroe circuit courts provide that all depositions of experts are admissible at trial unless a written objection is given five days prior to the taking of the deposition. Rule 7(B), *Rules of Practice and Procedure of the Monroe Circuit Court*. We applaud such a rule which recognizes that it is in the public interest that physicians are available to provide medical services to their patients and allows physicians to provide needed testimony through depositions in lieu of live testimony.

7. The reason for requiring objections to the form of questions and answers be made during the process of taking a deposition is so that the deposition retains some use at the time of trial; otherwise counsel would be encouraged to wait until trial before making any objections with the hope that the testimony, although relevant, will be excluded because of the manner in which it was elicited. *Osborne v. Wenger* (1991), Ind.App., 572 N.E.2d 1343, 1348.

cured if promptly presented at the time of the deposition. If there were any errors, the Mundys waived them. *See* T.R. 32(D)(3)(b).

### B. Dr. Hastings' Expert Opinion

■ Moreover, even if the Mundys had not waived this error, we find that Dr. Hastings' statement that Dr. Angelicchio was not negligent was a permissible expert opinion.

■ In a medical malpractice case, Indiana law requires expert opinion as to the existence and scope of the standard of care which is imposed upon physicians and as to whether particular acts or omissions measure up to that standard. *McGee v. Bonaventura* (1993), Ind.App., 605 N.E.2d 792, 794. When the issue of care is beyond the realm of lay persons, expert opinion is required in an evaluation of a particular physician's conduct within the framework of the duty imposed by law. *Kerr v. Carlos* (1991), Ind.App., 582 N.E.2d 860, 863. The issue of technical negligence in performing surgery is "peculiarly within the knowledge of medical [providers]." *Id.* at 864 (coronary by-pass surgery). To place the issue of negligence in controversy, a medical expert must testify that the defendant's treatment fell below the applicable standard of care and not merely that he would have treated the patient differently. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190.

The portion of Dr. Hastings' deposition which the Mundys first objected to at trial is as follows:

Q: Doctor, the injury to Mrs. Mundy's nerve, is that an injury that can happen to a patient without negligence on the part of the physician? I'm simply saying do you feel, Doctor, that Dr. Angelicchio did not meet the accepted and appropriate standard of care in performing the procedure that he did with the resulting injury to Mrs. Mundy, or do you feel that that is the type of an injury that can occur when a physician has used reasonable care and has not been negligent?

A: I would agree with Mr. Harrison, that puts me in a very difficult situation to answer something in black and white. I have, myself, struggled with this and I have asked other physicians, you know, just for their idea of how commonly an injury like this can occur, whether or not it's to be expected or whether it's not to be expected. My personal believe [sic] is that it is not negligent, that it is a severe complication, that it is something that has left Mrs. Mundy with a bad problem from which she will never recover. On the basis of how he approached the release of the transverse carpal ligament I do not find any evidence on this isolated case of negligence.

Record at 340, 343–44.

Here, Dr. Hastings, an orthopedic surgeon, was questioned regarding the appropriate standard of care, negligence, and whether Nancy's injury could occur when a physician is not negligent. Dr. Hastings responded by indicating that in his opinion Dr. Angelicchio was not negligent. We cannot say that because Dr. Hastings stated Dr. Angelicchio was not negligent instead of stating that his performance did not fall below the applicable standard of care makes his testimony an impermissible legal conclusion.

The requirement that an expert testify whether the physician's treatment did or did not fall below the applicable standard of care is equivalent to requiring an expert to testify whether the physician was negligent. Both are permissible legal conclusions when made by a qualified expert in a medical malpractice case where the issue of care is beyond the realm of laypersons. *See Kerr*, at 863 (MRP experts held physician not technically negligent in his performance of by-pass operation).

### C. Hearsay

■ The Mundys next contend that Dr. Hastings' testimony was erroneously admitted because it was impermissible hearsay. Specifically, the Mundys claim that because Dr. Hastings asked other physicians how common such an injury occurs that his testimony was inadmissible hear-

say. Notwithstanding the Mundys' waiver of any error, Dr. Hastings' testimony was admissible.

 Hearsay is an out-of-court statement offered to prove the truth of the matter asserted therein, which rests on the credibility of the out-of-court declarant who is unavailable for cross-examination. *Miller v. State* (1991), Ind., 575 N.E.2d 272, 274. If the challenged evidence is hearsay, then it is inadmissible unless it meets one of the exceptions to the hearsay rule. *Id.*

Here, Dr. Hastings did not testify as to what the other physicians said to prove the truth of the frequency of a median nerve injury during carpal release surgery. Dr. Hastings testified that Dr. Angelicchio was not negligent. The fact that Dr. Hastings conversed with others on the frequency of this injury is not itself hearsay and does not make Dr. Hastings' personal opinion on Dr. Angelicchio's negligence hearsay. This is distinguishable from *Miller* where one physician testified at trial about the contents of a pathology report prepared by another physician (who was not called as a witness) and which was relayed to the testifying physician by telephone. The evidence in *Miller* was inadmissible hearsay because the contents of the pathology report were offered to prove the truth of the facts asserted therein and were prepared by an out-of-court declarant who was unavailable for cross-examination. *See Miller*, at 274.

 Furthermore, even if Dr. Hastings had based his opinion in part on inadmissible hearsay, it would be of no consequence. An expert may offer an opinion based in part upon reports not in evidence and upon inadmissible hearsay, provided (1) the expert has sufficient expertise to evaluate the accuracy and reliability of the information, (2) the report is of the type normally found reliable, and (3) the information is the type customarily relied upon by the expert in the practice of his profession. *In re Paternity of K.G.* (1989), Ind.App., 536 N.E.2d 1033, 1035, *aff'd*, (1989), Ind., 545 N.E.2d 564; *see also* Ind.Rule of Evidence 703, effective January 1, 1994. Dr. Hastings' statements were properly admitted.

## IV. MRP Chairman's Testimony and Notes

The Mundys contend that the trial court erred in twice refusing to allow attorney Kent Frandsen, chairman of the MRP, to testify as to what he had written in paragraph three of a memorandum after listening to the MRP's discussions or to allow paragraph three to be admitted into evidence. Preserved for appellate review in an offer to prove, paragraph three and Mr. Frandsen's testimony would have been as follows:

> "The doctors believe that the surgeon was operating on the radial side of the nerve which is the wrong side as all of them agree that standard practice is that the surgeon will always work up the ulnar side of the nerve in order to avoid this sort of problem. They assume he got there inadvertently."

Record at 113. The trial court sustained Dr. Angelicchio's objections to the Mundys' attempts to introduce this testimony, that it was hearsay, that it was not inconsistent with the MRP's unanimous opinion, and that it did not rebut or impeach Dr. Crane's testimony that each member of the MRP felt there was no malpractice. Record at 111–12, 363–65.

### A. Hearsay

 The Mundys first contend this proffered evidence was not hearsay. The Mundys claim it was offered to show that the MRP reached conclusions that were inconsistent with their written final, unanimous opinion which was admitted into evidence. They claim the evidence was not offered for the truth of the facts asserted therein, but to rebut Dr. Crane's inconsistent testimony that "[t]he review panel felt that no malpractice had occurred" and that [a]ll three members of the review panel felt the same way that the evidence did not support the conclusion that the defendant failed to meet the applicable standard of care." Record at 253, 257.

Mr. Frandsen's testimony was hearsay because it related statements of the MRP

which were made out-of-court by declarants who were unavailable for cross-examination and was offered to prove that members of the MRP believed that Dr. Angelicchio was operating on the wrong side of the nerve and that this fell below the applicable standard of care. *See Miller,* at 274.

■ Furthermore, the excerpts in Mr. Frandsen's memorandum relating to preliminary, informal discussions of the MRP in which members stated that Dr. Angelicchio was operating on the wrong side of the nerve but that they assumed he got there inadvertently are not inconsistent with the MRP's ultimate unanimous opinion that the evidence did not support the conclusion that Dr. Angelicchio failed to meet the applicable standard of care. Moreover, the Mundys cross-examined each of the three physicians on the MRP regarding their opinions and conclusions. Thus, Mr. Frandsen had nothing to offer and the Mundys were not prejudiced by exclusion of his testimony. The trial court properly excluded this hearsay evidence.

### B. Hearsay Exceptions

Notwithstanding our finding that the trial court properly excluded Mr. Frandsen's testimony, we will address the Mundys' claims. The Mundys contend that if Mr. Frandsen's testimony was hearsay, it was nonetheless admissible under three separate hearsay exceptions.

### 1. Present Sense Impression

■ The Mundys contend that this evidence is admissible under the present sense impression exception of Federal Rule of Evidence 803(1) and Ind.Proposed Rule 803(1). Because the Federal rules and proposed rules of evidence (effective January 1, 1994) are not binding on us, we will address the Mundys' assertions under the applicable Indiana rules of evidence.

The current present sense impression rule, which is not changed by Ind.Proposed Rule 803(1), provides:

> Under the concept of res gestae, statements accompanying and describing or explaining a litigated, material event, act,

condition, or transaction at the heart of the case are admissible under the present sense impression exception. To render the expression or declaration of another admissible, the party making it must have been so related to the occurrence as to make his declaration a part of it. The test seems to be that to render the utterance or declaration of another admissible, it must flow from one of the actors, or from one sustaining some relation to the transaction, and be so intimately connected with the litigated act as to be the act speaking of itself through the witness, and not the witness speaking the words of another, employed concerning the act.

*Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331, 336.

Mr. Frandsen's statements are not statements by the members of the MRP. They are statements made by Mr. Frandsen stating what he claims the members said. Moreover, the MRP members were not "so intimately connected with the litigated act." *See Spears,* 401 N.E.2d at 336. In addition, the MRP members' statements, which Mr. Frandsen attempts to summarize, were made while the MRP was reviewing written submissions. This does not qualify as perceiving a material event, condition, or transaction. The present sense impression exception is not established to admit the hearsay evidence.

### 2. Then Existing Mental, Emotional, or Physical Condition

■ The Mundys next contend that Mr. Frandsen's testimony or his notes are admissible under FRE 803(3) and Ind.Proposed Rule 803(3) (effective January 1, 1994). The current state of mind exception, which is not changed by Ind.Proposed Rule 803(3), provides:

> Otherwise inadmissible hearsay is admissible when the testimony is not offered for the truth of the matter asserted therein, but to show the declarant's state of mind when it is in issue.

*Light v. State* (1989), Ind., 547 N.E.2d 1073, 1082, *trans. denied.*

The state of mind of Dr. Crane or the other members of the MRP was not an issue at trial and the statements Mr. Frandsen attempted to relay were not spontaneous declarations by MRP members expressing their state of mind at the time. *See Komyatti v. State* (1986), Ind., 490 N.E.2d 279, 286 (where declarant's state of mind was irrelevant to the issues in the case, the state of mind exception is inapplicable and it is inadmissible hearsay). This exception is not established here to admit the hearsay evidence.

### 3. Attacking Credibility of Declarant

■ The Mundys next contend Mr. Frandsen's testimony or memorandum were admissible under FRE 806 or Ind.Proposed Rule 806 to impeach Dr. Crane's hearsay testimony that all three members of the review panel felt that no malpractice had occurred and that all felt the evidence did not support the conclusion that Dr. Angelicchio failed to meet the applicable standard of care. Indiana does not currently have a clear rule in effect on this issue, for it has not previously articulated FRE 806. However, FRE 806 is a traditional principle of hearsay law and all other states have adopted it. FRE 806 and Ind.Proposed Rule 806 (effective January 1, 1994) provide:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

Since we previously determined that Frandsen's statements were not inconsistent with any previous testimony and did not impeach Dr. Crane's testimony or the MRP's unanimous opinion (*see Issue IV.A.*), we need not go any further to determine that the evidence was not admissible under Rule 806. In addition, this evidence was cumulative since it was consistent with the MRP's opinion which was already in evidence. Thus, the Mundys were not prejudiced.

### V. Role of MRP Chairman

■ Furthermore, we hold that an attorney serving as chairman of a MRP may not testify as to what other members of the MRP stated or discussed during their informal meetings or interpret their discussions and render an opinion of how the attorney thinks the MRP should have decided the case. The attorney may not even vote on the MRP's opinion, because he is not qualified to do so. *See* I.C. 16–9.5–9–3. It logically follows that he is not qualified to take portions of medical discussions, interpret them, or render an opinion.

The attorney-chairman's duties are merely to expedite the selection of other MRP members and their review of the proposed claim, to act in an advisory capacity, and to preside over meetings. I.C. 16–9.5–9–3, –5. The MRP meetings are statutorily required to be informal to foster full and open discussions by the medical expert members before they arrive at their final decision. *See* I.C. 16–9.5–9–5. Informal and preliminary highly technical discussions may create an impression in a layperson of thoughts inconsistent with the MRP's ultimate opinion. The primary purpose of allowing only health care professionals to render the MRP opinion is so that we may have an expert opinion. *See* I.C. 16–9.5–9–3.5. An attorney-chairman should not be allowed to say what he thinks the experts really thought.

### CONCLUSION

The trial court did not err in finding Dr. Hastings and Dr. Crane unavailable for trial or in allowing challenged portions of Dr. Hastings' deposition to be read to the jury. The trial court did not err in refusing to allow the MRP chairman to testify regarding the MRP's preliminary discussions or in refusing to admit a portion of the chairman's notes recounting discussions.

Judgment affirmed.

ROBERTSON and STATON, JJ., concur.