Timothy F. KELLY d/b/a Timothy F. Kelly and Associates, Appellant–Defendant,

v.

Stanley LEVANDOSKI d/b/a Stan's Service, Appellee–Plaintiff.

No. 46A03–0406–CV–287.

Court of Appeals of Indiana.

April 18, 2005.

Beth L. Brown, Karl K. Vanzo, Law Offices of Timothy Kelly & Associates, Dyer, IN, Attorneys for Appellant.

V. Michael Drayton, Sallwasser and McCain, LaPorte, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Timothy F. Kelly, d/b/a Timothy Kelly and Associates, appeals a judgment in fa-

vor of Stanley Levandoski, d/b/a Stan's Service. Kelly raises four issues, which we restate as:

1. Whether the trial court erred when it denied Kelly's motion for summary judgment;

2. Whether the trial court erred when it denied Kelly's motion for judgment on the evidence;

3. Whether the trial court abused its discretion when it limited the testimony of Kelly's expert witness; and

4. Whether the trial court erred when it instructed the jury on implied contract, quasi contract, and agency law.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Levandoski operates a towing service in LaPorte County. On September 30, 1995, he received a call from LaPorte County Police requesting he tow a van from an accident scene. Levandoski did not have a contract with the County, had no obligation to tow the vehicle, and would receive no reimbursement from LaPorte County in exchange for towing the van. Levandoski towed the van to his shop.

The owners of the van were Franklin and Darlene Brown. About six days after the accident, Franklin Brown came to Levandoski's lot to retrieve personal items from the van. Levandoski and Brown did not discuss what Levandoski was to do with the van or who was to pay for Levandoski's services.

The Browns hired Kelly to represent them in a personal injury action based on the accident. Kelly called Levandoski to inquire about the van. Kelly told Levandoski to "hold on to it," (Appellant's App. at 270), because Kelly needed the van for legal purposes and to send Kelly "a copy of the bill." (*Id.*) Kelly told Levandoski he would be paid when the case was over. Levandoski generated a bill and sent it to Kelly.

Three weeks after the accident, in late October 1995, someone from Kelly's office went to Levandoski's lot to take pictures of the van. Kelly's office called Levandoski on four or five other occasions to request updated copies of the bill for towing and storage of the van. On four occasions, Levandoski generated bills and forwarded them to Kelly.

When the Browns' personal injury lawsuit was over, Levandoski had stored the van for four years and the final bill was $18,827.00. That bill was one of the damages the Browns claimed in their lawsuit, and the jury awarded the Browns $132,000.00. Kelly did not compensate Levandoski for towing and storing the van, so Levandoski sued Kelly.

Kelly filed a motion for summary judgment, which the trial court denied. At the end of Levandoski's evidence, the trial court denied Kelly's motion for judgment on the evidence. Kelly attempted to introduce expert testimony regarding the formation of contracts in general and, specifically, between attorneys and service providers for clients, and the trial court sustained Levandoski's objection to such testimony. At the end of Kelly's evidence, he again requested judgment on the evidence, which the trial court denied. At Levandoski's request and over the objection of Kelly, the court instructed the jury on implied contracts, quasi contracts, and agency law. The jury returned a verdict

1. We held oral argument on March 8, 2005, at the Statehouse in Indianapolis. We thank counsel for their presentations.

for Levandoski in the amount of $18,827.00.

## DISCUSSION AND DECISION

### 1. *Summary Judgment*

■ As an initial matter, the parties disagree about which documents Kelly should have included in his appendix. Levandoski argues Kelly waived his summary judgment argument by including in his Appellant's Appendix only the documents Kelly designated to the trial court. Kelly claims he was obliged to include only his documents because Levandoski was required to file an appellee's appendix that included his designated evidence. Kelly is wrong.

The purpose of the appendix in civil appeals is to provide us "only those parts of the record on appeal that are necessary for the Court to decide the issues presented." App. R. 50(A)(1). "The appellant's Appendix shall contain ... copies of the following documents ... (f) pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." App. R. 50(A)(2)(f).

■ That rule means "when appealing the grant or denial of a motion for summary judgment, it is not sufficient for the appellant to include in the appendix only those documents designated by it to the trial court." *Thomas v. N. Cent. Roofing*, 795 N.E.2d 1068, 1070 n. 1 (Ind.Ct.App. 2003). "Rather [appellants] should [include] within their appellant's appendix all documents relating to the disposition of the motion for summary judgment, including any documents that [appellee] designated and filed with the trial court." *Id.* Recently, when an appellant failed to provide the documents designated to the trial court by the appellee, we determined the appellant waives his claim the trial court

erred by granting summary judgment. *Yoquelet v. Marshall County*, 811 N.E.2d 826, 830 (Ind.Ct.App.2004); *see also Hughes v. King*, 808 N.E.2d 146, 148 (Ind. Ct.App.2004) (dismissing appeal of grant of summary judgment when appellant failed to include all designated evidence in the appendix).

■ However, we prefer to decide issues on their merits when possible. *Hughes*, 808 N.E.2d at 147. App. R. 49(B) provides: "Any party's failure to include any item in an Appendix shall not waive any issue or argument." Despite Kelly's failure to provide the evidence Levandoski designated to the trial court in response to Kelly's motion for summary judgment, Levandoski provided the documents in his Appellee's Appendix. Accordingly, we may decide the issue on the merits.

■ Kelly argues the trial court erred when it denied his motion for summary judgment. "The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Branham v. Celadon Trucking Serv., Inc.*, 744 N.E.2d 514, 521 (Ind.Ct.App.2001), *trans. denied* 753 N.E.2d 16 (Ind.2001). A trial court should grant summary judgment if the pleadings and designated evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Any doubts about the existence of material issues of fact must be resolved in favor of the non-moving party, which here is Levandoski. *SLR Plumbing & Sewer, Inc. v. Turk*, 757 N.E.2d 193, 198 (Ind.Ct.App.2001).

The party moving for summary judgment has the initial burden to set forth evidence demonstrating no factual issues exist. *Branham*, 744 N.E.2d at 521.

Then, the burden shifts to the nonmoving party to produce evidence demonstrating an issue of fact exists. *Id.* The nonmoving party may not simply rest on the pleadings; rather, he or she must designate evidence to the trial court. *Id.*

We review the trial court's decision applying the same standard applied by the trial court. *SLR Plumbing,* 757 N.E.2d at 198. In addition, our review is limited to the evidence designated to the trial court. *Id.* We may affirm on any theory supported by the evidence designated to the trial court. *Branham,* 744 N.E.2d at 521.

Levandoski filed an action against Kelly to recover payment for his storage of the Browns' van for four years. Contracts are formed when parties exchange an offer and acceptance. *Wallem v. CLS Industries, Inc.,* 725 N.E.2d 880, 883 (Ind.Ct.App.2000). For an oral contract to exist, parties have to agree to all terms of the contract. *Id.* If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed. *Id.* "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Id.* Whether a set of facts establishes a contract is a question of law. *Id.*

Kelly asserts as a matter of law no contract was formed between himself and Levandoski. We cannot agree.

In his answers to interrogatories, Levandoski stated:

[Mr. Kelly] told me he represented Mr. and Mrs. Brown in a personal injury case and instructed me to hold onto, store and preserve the Brown's 1995 Dodge Van as he needed it in order for him to make claims and a possible lawsuit on behalf of the Browns. I was told to send him (Mr. Kelly) the bills for the fees incurred for towing and storage of the van. Thereafter on a number of occasions I was requested to update the storage bill so he (Mr. Kelly) could use the bill at trial. Mr. Kelly told me that the towing and storage fees would be paid when the case was settled or he (Mr. Kelly) recovered at trial on behalf of his clients, the Browns.

All I can say is that I sure as heck would not have stored this vehicle from October 6, 1995 to October 20, 1999, four (4) years, if it were not for the representations and instructions by Mr. Kelly!

(Appellee's App. at 19.) In addition, he explained:

Mr. Kelly's representations and instructions made over the telephone as stated in No. 2 [quoted directly above] were very definite and I understood them easily and did what he requested. I sent him updated bills as he requested and he never told me anything different than what he first represented to me. He (Mr. Kelly) never objected to the storage bills or that I was still storing the vehicle as he requested. He (Mr. Kelly) never told me he was not going to be responsible for the storage bill nor did he ever tell me someone else was responsible.

(*Id.* at 25.)

Those answers create genuine issues of material fact about whether an oral contract was created.[2] If Kelly asked

2. In his rely brief Kelly claims Levandoski's answers to interrogatories could not have created a genuine issue of material fact to preclude summary judgment because those answers conflict with Levandoski's deposition answers. (Appellant's Reply Br. at 4.) A plaintiff may not create a genuine issue of material fact at the summary judgment stage by simply asserting a new set of facts himself. *See Gaboury v. Ireland Road Grace Brethren,*

Levandoski to keep the van, to send copies of the bills to Kelly, and be paid when the personal injury case was over, an offer can reasonably be inferred. Levandoski's act of sending the bill to Kelly can reasonably indicate his acceptance of Kelly's offer. If Levandoski stored the van longer than he would have because he believed he would be paid for the storage, consideration can be found. Accordingly, it appears the trial court did not err when it declined to grant Kelly's motion for summary judgment under Kelly's theory that as a matter of law no contract was formed.

■ Nevertheless, Kelly argues he cannot be held personally responsible for the contract because he was acting as the Browns' agent and an agent is not responsible for a contract made on behalf of the principal. "Indiana recognizes the general rule that where an agent discloses the identity of his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally bound by the contract unless the agent agrees to be so bound." *Boesch v. Jones,* 712 N.E.2d 1061 (Ind.Ct.App.1999), *trans. denied* 726 N.E.2d 313 (Ind.1999).

In *Boesch,* we were faced with the question whether "an attorney may be held personally liable for the costs of court reporting services he requested on behalf of his client." *Id.* at 1062. The facts were these:

Boesch is an attorney hired by Dr. Sylvester Nathan (Nathan) and Jones is a court reporter hired by Boesch for her services provided at a deposition of Nathan. Neither Jones nor Boesch presented any direct evidence as to the precise terms of the agreement. On November 8, 1996, Jones attended the deposition and recorded Nathan's testimony. Jones was aware that Boesch had arranged for her services on behalf of Nathan. After the deposition, Jones sent a bill for her services to Boesch. Boesch forwarded the bill to Nathan for payment. However, Nathan never paid Jones. After the passage of over five months and issuance by Jones of no less than three billing statements during this time period, Boesch, for the first time, forwarded a letter to Jones indicating that Nathan was responsible for the payment of all deposition charges. Meanwhile, Boesch obtained a judgment against Nathan for attorney fees, and indicated to Jones that the funds, if collected, would be used to pay the court reporting charges. However, Nathan never paid either Boesch or Jones. Therefore, Jones filed suit against Boesch to recover for her services. A bench trial was held on September 21,

---

*Inc.,* 446 N.E.2d 1310, 1314 (Ind.1983) ("contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant"), *reh'g denied.*

Kelly first raised this argument in his reply brief. Appellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal. *See Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 593 n. 6 (Ind.2001); *see also* Ind.App. R. 46(C) ("No new issues shall be raised in the reply brief."). Accordingly, this argument is waived for appeal.

Moreover, the material points of Levandoski's story in his deposition and his interrogatories are not contradictory: Kelly told Levandoski in a phone call to hold on to the van and send the bills to Kelly. Because the "clear import" of his testimony had not changed, *Gaboury* is distinguishable. *See Liberty Mut. Ins. Co. v. Blakesley,* 568 N.E.2d 1052, 1056 (Ind.Ct.App.1991) (distinguishing *Gaboury* because while some portions of the non-movant's deposition testimony were different from his affidavit, "the clear import" of his testimony had not changed).

1998 and the court issued its judgment on October 1, 1998 in Jones' favor. Boesch now appeals.

*Id.*

Boesch claimed the trial court erred when it ruled in Jones' favor because an attorney cannot be responsible for a contract made on behalf of a disclosed client. We held:

> Nevertheless, it is well settled that an attorney, by virtue of the representation, becomes a powerful agent with a great deal of authority. Retention confers on an attorney the general implied authority to do on behalf of the client all acts in or out of court necessary or incidental to the prosecution or management of the suit or the accomplishment of the purpose for which the attorney was retained. Essentially, an attorney is more than a mere agent of the client, he is the sole manager of the business committed to his care.

> \* \* \* \* \* \*

> Courts in other jurisdictions have considered the agency relationship of the attorney and client a modified one, treating the attorney as a principal because his education, experience and professionalism render him in charge of the litigation. In those jurisdictions, the attorney ordering goods or services for the client will also be personally liable for those expenses, in the absence of an express disclaimer of such responsibility. Thus, under this line of reasoning, the burden is on the attorney to expressly disclaim responsibility rather than upon the service provider to obtain the attorney's personal promise to pay.

The trial court followed the view that the attorney should be responsible to a service provider in the absence of a disclaimer, and held Boesch liable for the costs of Jones' court reporting. Further, the court found Boesch to be "more than a mere agent, rather in accordance with his professional duties he is indeed the strategist and is thus empowered to perform the minutiae details of litigation." (R.44). We agree. We think it only fair that an attorney with superior legal knowledge who actively seeks another's services in connection with litigation bear the burden of clarifying his intent regarding payment.

*Id.* at 1063 (internal citations omitted).

Kelly claims we should not follow *Boesch* because the storage of the van was not a "litigation expense." [3] Kelly asserts Levandoski's storage of the van was "performed in connection with an automobile accident which resulted in litigation," not "in connection with litigation." (Appellant's Br. at 11.) To call storage of the van a litigation expense would, Kelly claims, be akin to calling medical services provided after a traffic accident litigation expenses. That, he asserts, would make attorneys responsible for the medical bills of their clients.

Kelly's argument is a red herring. Kelly did not simply call and request a copy of the towing and storage bill to present as damages in the lawsuit. Instead, Kelly called and asked Levandoski to keep the van because Kelly needed it for the Browns' personal injury litigation. As Levandoski explains: "The better comparison would be one where Attorney Kelly had a medical exam performed for permanent partial impairment on his client, as

---

**3.** In *Boesch,* we referred to "services in connection with litigation." 712 N.E.2d at 1063. Kelly's expert witness testified at trial: "Litigation expense is a service that I have taken on for the purpose of furthering the litigation." (Tr. at 471.) We use these terms interchangeably.

with Stan's services, Attorney Kelly would and should be responsible for those services he requests." (Appellee's Br. at 13–14.)

Kelly's request that Levandoski keep the van because Kelly needed it for the Browns' lawsuit was a request for a service in connection with litigation and can reasonably be construed as a "litigation expense." Thus, Kelly could be held personally liable under *Boesch*, unless Kelly specifically disclaimed personal liability to Levandoski. Kelly acknowledges he made no such disclaimer to Levandoski. Kelly was not entitled to summary judgment on the ground he was an agent of the Browns.

 Kelly also claims there was no consideration for a contract between himself and Levandoski. Consideration is a "bargained for exchange" whereby the promisor accrues a benefit or the promisee accepts a detriment. *DiMizio v. Romo*, 756 N.E.2d 1018, 1022–23 (Ind.Ct.App. 2001), *trans. denied* 774 N.E.2d 509 (Ind. 2002). "A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled." *Id.* at 1023. "A detriment, on the other hand, is a legal right the promisee has forborne." *Id.*

Specifically, Kelly asserts that because the police, and not he, asked Levandoski to tow and store the van, Levandoski was not providing a benefit to Kelly that was not "already being provided for the Browns." (Appellant's Reply Br. at 6.) Kelly fails to acknowledge the facts most favorable to Levandoski. Levandoski initially towed and stored the van for the Browns at the request of the police; however, Kelly then asked Levandoski to keep the van because Kelly needed it for the lawsuit. Levandoski kept the van for four years, and he claims he did so in reliance on Kelly's request and promise that he would be paid when the case was over. Levandoski's statements, which the trial court was obliged to take as true at the summary judgment stage, demonstrated a genuine issue of material fact regarding consideration.

 Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment,[4] which is also called *quantum meruit*, contract implied-in-law, constructive contract, or quasi-contract. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind.1991), *reh'g denied, cert. denied* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). These theories are "legal fictions invented by the common law courts in order to permit recovery where in fact there is no true contract, but where, to avoid unjust enrichment, the courts permit recovery of the value of the services rendered just as if there had been a true contract." *Wallem*, 725 N.E.2d at 890.

 "Principles of equity prohibit unjust enrichment in cases where a party accepts the unrequested benefits another

---

4. Kelly asserts the trial court permitted Levandoski "to pursue three alternate theories of recovery, only one of which was plead [sic] in [Levandoski's] complaint." (Appellant's Br. at 13–14.) Kelly claims this was improper but does not cite any authority to support his position. Accordingly, the argument is waived for appeal. *See* Ind. Appellate Rule 46(A)(8)(a).

Moreover, Kelly's argument misrepresents Levandoski's complaint. Contrary to Kelly's assertion, Levandoski's complaint does not contain the word "contract." (*See* Appellant's App. at 227–29.) It simply sets out the relevant facts and requests a judgment against Kelly for "$18,827.00, costs of this action, and all other just and proper relief in the premises." (*Id.* at 229.) As Levandoski notes, Trial Rule 8 permits him to set out the facts and proceed without adopting a theory of recovery. *See Cahoon v. Cummings*, 734 N.E.2d 535, 542 (Ind.2000). Accordingly, neither the facts nor the law support Kelly's assertion.

provides despite having the opportunity to decline those benefits." *Truck City of Gary, Inc. v. Schneider Nat. Leasing,* 814 N.E.2d 273, 280 (Ind.Ct.App.2004). The purpose of these equitable theories is to force those who have been unjustly enriched at the expense of another party to make restitution to that other party. *Bayh,* 573 N.E.2d at 408 (quoting Restatement of Restitution § 1 (1937)).

■■■■ "A party seeking to recover on a theory of *quantum meruit* must demonstrate that a benefit was rendered to another at the express or implied request of such other party." *SLR Plumbing,* 757 N.E.2d at 200. The plaintiff must also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust and that the plaintiff expected payment. *Bayh,* 573 N.E.2d at 408. Levandoski's answers to interrogatories create genuine issues of material fact about whether Kelly asked Levandoski to keep the van, whether Levandoski stored the van longer than he would have because he believed he would be paid for the storage when the Browns' case concluded, and whether allowing Kelly to avoid payment for the storage would be unjust.

■■■■ Finally, Levandoski could have recovered under a theory of unilateral contract. A unilateral contract arises without a "bargaining process or exchanges of promises by the parties." *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 719 n. 11 (Ind.1997). "Only one party makes an offer (or promise) which invites performance by another, and the perform-

ance constitutes both the acceptance of that offer and the consideration." *Id.* Levandoski asserted he kept the van for four years because Kelly promised him he would be paid when the Browns' lawsuit concluded. As such, genuine issues of fact exist regarding the creation of a unilateral contract.

The evidence most favorable to Levandoski would permit a jury to find in favor of Levandoski under theory of express contract, unjust enrichment, or unilateral contract. Accordingly, the trial court did not err when it declined to grant Kelly's motion for summary judgment.

## 2. *Judgment on the Evidence*

■■■■ Kelly also claims the trial court erred when it did not grant his motion for judgment on the evidence.[5] A motion for judgment on the evidence challenges the legal sufficiency of the evidence. *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1120 (Ind.Ct.App.1995), *trans. denied.* If issues are "not supported by sufficient evidence the court shall withdraw such issues from the jury and enter judgment thereon." *Id.* The trial court should consider the evidence in the light most favorable to the non-moving party and determine whether substantial evidence, or a reasonable inference therefrom, supports each essential element of a claim. *Id.*

■■■■ On appeal from the denial of a motion for judgment on the evidence, we apply the same standard as the trial court.

---

5. Levandoski claims Kelly waived his argument regarding the denial of his motion for judgment on the evidence because Kelly presented evidence on his own behalf. Trial Rule 50(A)(6) provides: "[E]rror of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted." *See also F.W. Woolworth Co., Inc. v. Anderson,* 471 N.E.2d 1249, 1253 n. 3 (Ind.Ct.

App.1984) (error in denial of motion for judgment on the evidence made after plaintiff presents his evidence corrected by defendant's presentation of evidence). However, Kelly renewed his motion for judgment on the evidence after he presented his own evidence. "[W]e treat such an issue as another attack on the sufficiency of the evidence." *Id.*

*Id.* We consider the evidence most favorable to the non-moving party and determine whether the evidence supports "without conflict only one inference that is in favor of the defendant." *Hurlow v. Managing Partners, Inc.*, 755 N.E.2d 1158, 1161 (Ind.Ct.App.2001), *trans. denied* 774 N.E.2d 509 (Ind.2002). If reasonable persons could come to different conclusions from the evidence, the trial court should not grant a motion for judgment on the evidence. *Id.*

At trial, Levandoski testified as follows:

A I was contacted by Mr—I believe I was contacted by Mr. Kelly.

Q And Mr. Kelly contacted you how?

A By telephone.

Q Okay, and did he identify himself as Mr. Kelly?

A Yes, sir.

Q How else did he identify himself?

A That he was an attorney and that he was working on a Brown case in which that's who owned the van. And that he knew I had the van.

Q Okay. Did you have a conversation then with Mr. Kelly about what to do with this van?

A Yes, sir.

Q And what did Mr. Kelly tell you?

A Mr. Kelly informed me that it was wrapped up in a legal suit of some nature and to hold on to the vehicle and send him the bill. And then the [gist] of it was that I was to hold on to it, send him the bill, and when this legal suit, I'm trusting with the Browns, was over that I would get paid.

Q Was there anything else that Mr. Kelly told you in that conversation?

A He gave me his address.

Q On how—where to send the bill to?

A To where to send the bill to.

Q And what—

A Munster.

Q —did you do in response to that call from Mr. Kelly?

A I done what Mr. Kelly wanted. I sent him—

Q What was it?

A—I sent him a copy of the bill.

Q Do you remember when it was that Mr. Kelly contacted you?

A Middle of October '95, perhaps early part of November, I would say closer to October.

Q Okay. During that conversation that you had with Mr. Kelly, did he specifically tell you that he would not personally be responsible for the bills for storage?

A No, sir.

(Appellee's App. at 158–59.)

As at the summary judgment phase, Kelly argues his requests that Levandoski store the van and send the bills to Kelly could not, as a matter of law, have created an express contract between them. In addition, Kelly again argues he cannot be held personally responsible for the bill as the Browns' agent because the storage was not a "litigation expense" as defined in *Boesch.* As at the summary judgment phase, those arguments fail.

Levandoski's testimony created a dispute of material fact about whether Levandoski stored the van at Kelly's request with the understanding he would be paid when the Browns' case concluded. In addition, it created questions of fact about whether equity required Kelly to pay Levandoski for the service so that Kelly would not be unjustly enriched. As the record contains evidence that supports each element necessary for Levandoski to recover under a number of legal theories, we cannot hold the trial court erred when

it denied Kelly's motion for judgment on the evidence.

### 3. *Expert Witness Testimony*

 Admission of evidence, including the proffered testimony of experts, lies within the sound discretion of the trial court. *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258, 1263 (Ind.Ct.App. 2002), *trans. denied* 783 N.E.2d 703 (Ind. 2002). The court has abused its discretion if its decision was against the logic and effect of the facts and circumstances before the court. *Id.* We will reverse for the improper exclusion of evidence only if the appealing party can demonstrate prejudice. *Indianapolis Podiatry, P.C. v. Efroymson,* 720 N.E.2d 376, 383 (Ind.Ct. App.1999) ("Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties."), *trans. denied* 735 N.E.2d 230 (Ind.2000).

Kelly called as an expert witness an attorney, Craig Braje. Kelly attempted to have Braje testify regarding: (1) the elements of a contract; (2) case law regarding contracts, including *Boesch v. Jones;* (3) the legal concept of agency; (4) his opinion whether a contract existed between Kelly and Levandoski; (5) his opinion that Levandoski failed to mitigate his damages; (6) his opinion whether Levandoski sued the right party; and (7) his opinion about the contingency fee arrangement between Kelly and the Browns.

Levandoski objected to those categories of testimony and, after a hearing at which Kelly presented his offer of proof, the court sustained Levandoski's objection:

> The Court on the basis of the offer to prove finds that Mr. Braje can testify as to what he does in the context of litigation, collecting facts, evidence etcetera, and what he normally does as it relates to preparing a case for trial.

> Mr. Braje can also testify as to what he does and what he considers to be the standard practice to hire people to assist as experts, and how he enters into agreements with those people.

> Mr. Braje may not testify as to his opinion as to whether or not the right person has been sued.

> Mr. Braje may not testify as to his interpretation of Exhibit G [the contingency fee agreement between Kelly and the Browns]. The reason for that is the testimony of Mr. Kelly that that agreement is put into common language that ordinary people can understand. Therefore, we do not need an expert to interpret that agreement.

> The Court stands in its rulings that Mr. Braje may not testify as to the elements of the contract. He may not testify as to agency, and the other matters that deal with what his opinion as to whether there is or is not a contract, that invades the province of the jury. All of Mr. Braje's opinions as to what the law is, and the Court has extremely high regard for Mr. Braje, are accurate. Those are jury instructions. They're to be given to the jury, that's the Court's function.

(Appellant's App. at 150–51.)

Ind. Evidence Rule 704 provides:

(a) Testimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.

(b) Witnesses may not testify to opinions concerning intent, guilt or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

Regarding that rule, we recently explained:

We are cognizant of the trend to allow expert opinion testimony even on the ultimate issue of the case, so long as the testimony concerns matters which are not within the common knowledge and experience of ordinary persons and will aid the trier of fact. . . .

We remain of the opinion, however, that experts should not be permitted to offer legal conclusions as part of their testimony because to do so would violate the spirit of Evidence Rule 704(b), which provides that "[w]itnesses may not testify to opinions concerning . . . legal conclusions." The purpose of the rule is that legal conclusions from a witness are not helpful to the trier of fact; the judge, not an expert witness, instructs on the law.

*Vaughn v. Daniels Co. (West Virginia), Inc.,* 777 N.E.2d 1110, 1122–123 (Ind.Ct. App.2002) (internal quotations and citations omitted), *transfer pending, clarified on reh'g on unrelated matter* 782 N.E.2d 1062 (Ind.Ct.App.2003).

The first three topics about which Kelly wished Braje to testify were: (1) the elements of a contract; (2) case law regarding contracts, including *Boesch v. Jones;* and (3) the legal concept of agency. Those topics, as the trial court held, are topics about which the court, and not a witness, should inform the jury. *See Vaughn,* 777 N.E.2d at 1123 ("the judge, not an expert witness, instructs on the law"). Kelly's expert witness should not have been permitted to explain those topics to the jury.

The other four topics about which Kelly wanted Braje to testify included Braje's opinions whether a contract existed between Kelly and Levandoski, whether Levandoski failed to mitigate his damages, whether Levandoski sued the right party, and about the impact of the contingency fee arrangement between Kelly and the Browns. Whether a set of facts establishes a contract is a question of law. *Wallem,* 725 N.E.2d at 883. Accordingly, Braje's opinion about the existence of a contract would have been a legal conclusion. In addition, the other three topics would have required Braje to draw conclusions based on application of the relevant law to the facts of the case, and as such they were legal conclusions.

We follow *Vaughn* and affirm the trial court's exclusion of those legal conclusions. *See* 777 N.E.2d 1110. Vaughn, a construction worker, sued his employer and two other companies after he was injured while constructing a coal preparation plant. When the defendants filed motions for summary judgment, Vaughn designated in opposition to summary judgment an affidavit from a construction expert. The expert's affidavit included in pertinent part the following statements:

12. . . . Failure to have a structural member and a railing around the top of the heavy media sump rendered the heavy media sump unreasonably dangerous.

In my opinion, failure to use safety engineering relating to the design of the heavy media sump proximately resulted in injuries to Mr. Vaughn.

13. . . . Defendant Daniels failed to use reasonable care by not applying the above safety engineering principles resulting in its failure to incorporate a structural member and handrail into the design of the heavy media sump. . . .

14 Based upon the discovery and documents, it is my opinion Defendant Daniels knew or in the exercise of reasonable care should have known that persons, such as Mr. Vaughn, intended to do work, maintenance, or stand in the top of the heavy media sump, as the

heavy media sump was designed to have a ladder for access....

15. Based upon my engineering and construction management expertise and review of the documents listed above, it is my opinion Defendants [sic] Daniels failed to use reasonable care by not having [a] construction management plan and/or a process of plant assembly plan for the design.

16.... The failure to have a construction management plan and/or a process of plant assembly plan for the design of the Cannelburg Project site proximately resulted in Mr. Vaughn's injuries.

17. Based upon engineering and construction management expertise and review of the documents listed above, it is my opinion Defendant Solar as owner of the property in question failed to use reasonable care by not requiring and/or participating in a construction management plan and/or a process of plant assembly plan for the design of the Cannelburg Project. Failure to use, such

reasonable care proximately resulted in injury to Mr. Vaughn.

*Id.* at 1118–120. We held those statements were inadmissible as "improper legal conclusions ... relating to proximate cause and reasonable care," which issues were to be decided by the jury when determining whether the defendants had been negligent. *Id.* at 1122.

Similarly, the legal conclusions about which Kelly wanted Braje to give his opinions were the legal conclusions the jury needed to reach in deciding whether to find a contract between Kelly and Levandoski and whether to award damages to Levandoski. The trial court did not err when it sustained Levandoski's objection to these categories of testimony.[6] *Id.*

### 4. *Jury Instructions*

■ Instruction of the jury lies within the discretion of the trial court, and we reverse only for an abuse of that discretion. *Armstrong v. Federated Mut. Ins. Co.,* 785 N.E.2d 284, 287 (Ind.Ct.App.

**6.** Kelly argues we should follow *Major v. OEC–Diasonics, Inc.,* 743 N.E.2d 276, 285 (Ind.Ct.App.2001), *trans. denied* 753 N.E.2d 15 (Ind.2001), wherein we held the trial court did not err when it admitted testimony from Dean Lefstein of the Indiana University School of Law—Indianapolis, who was qualified as an expert on legal ethics, regarding whether certain conduct violated rules of professional conduct for lawyers. However, part of our justification for finding no error was the case was tried to the bench, and the court expressly stated it would ignore the Dean's legal conclusions if the court disagreed with him. *Id.* Therefore, we decline to follow *Major.*

Nor is this case like those in which we have allowed doctors and police officers to testify regarding legal conclusions. *See, e.g., Freed v. State,* 480 N.E.2d 929, 931–32 (Ind. 1985) (court-appointed psychiatrists are permitted to testify about whether a defendant was legally sane when he committed the crime because psychiatrists have "specialized knowledge of the subject matter"); *Mundy v.*

*Angelicchio,* 623 N.E.2d 456, 462 (Ind.Ct. App.1993) (allowing testimony regarding whether a doctor was negligent "when made by a qualified expert in a medical malpractice case where the issue of care is beyond the realm of laypersons"); *Koziol v. Vojvoda,* 662 N.E.2d 985, 991 (Ind.Ct.App.1991) (trial court did not abuse its discretion by admitting evidence regarding fault in a traffic accident because the police officer "possessed special knowledge which would be helpful to the jury in understanding the evidence surrounding the accident and deciding the factual issues").

In the case before us, the issue was not "beyond the realm of laypersons," as most jurors will have engaged in at least one discussion—whether with, for example, a dry cleaner, an auto mechanic, a painter, a roofer, or a caterer—that led to an agreement for services in exchange for money. As the jury could obtain all the "specialized knowledge" it needed from the trial court's instructions, it did not need to hear Braje's opinions.

2003), *reh'g denied, trans. denied* 804 N.E.2d 750 (Ind.2003). Instructions should inform the jury on the law applicable to the facts of the case without misleading the jury and should enable the jury to understand the case in a manner that allows the jury to arrive at a fair, just, and correct verdict. *Id.* Instructions given to a jury must be correct statements of law, applicable to the evidence presented at trial, and relevant to the issues the jury needs to decide to reach a verdict. *Id.* at 289.

 Erroneous jury instructions need not result in reversal of a judgment. *Id.* at 287. Reversal is warranted only "upon an affirmative showing that the instructional error prejudiced the party's substantial rights." *Id.* at 289. If the verdict would not have been different, any error was harmless. *Id.* at 287.

Final instruction fourteen stated:

The Plaintiff has made a claim for damages based on contract implied in law. Even if you find that a contract has not been entered into, the plaintiff may be entitled to recover damages.

To recover, the plaintiff has the burden of proving the following elements by a preponderance of the evidence:

First: The plaintiff provided valuable services or benefits to the defendant;

Second: The services or benefits were provided at the express or implied request of the defendant;

Third: The services or benefits were provided under circumstances where it is only fair the plaintiff be compensated; and

Fourth: Compensation is necessary to prevent the unjust enrichment of the defendant at the expense of the plaintiff.

If you find after considering all the evidence that the plaintiff has proved each of these elements, you may award damages to the plaintiff for the reasonable value of the services or benefits provided.

(Appellant's App. at 190–91.)

 Kelly asserts the court should not have given this instruction because the record contained no evidence demonstrating Kelly received a benefit from Levandoski. As we discussed in Issue 1, *supra,* the evidence permitted the inference Kelly received the benefit of knowing the van was available during trial preparations if he needed it for an accident reconstructionist or to obtain damage estimates. Kelly claimed at oral argument he did not need the van for an accident reconstructionist because the only issue was the timing of the lights at the intersection where the accident occurred. However, 1998 correspondence from Wolf Technical Services to Kelly indicates to create an accident reconstruction Wolf would go see the van at "Stan's Towing." (Plaintiff's Exhibits Nos. 16 & 17.) Accordingly, the evidence permits the inference Kelly still thought he needed the van two and a half years after the accident and the inference Kelly believed Levandoski would still have the van. The evidence supported the inference that Kelly received a benefit from Levandoski.

Final instruction fifteen provided:

A unilateral contract is a promise in exchange for an act—one person promises to do a certain thing if another person performs or forbears from performing a certain act. The offer is accepted when the other person performs the act, or forbears. This acceptance makes the contract complete.

(Appellant's App. at 191.)

 Kelly asserts the evidence did not support the giving of this instruction because there was no evidence Levandoski refrained from seeking a salvage title to

the van based on the discussion between Kelly and Levandoski. Kelly again fails to acknowledge the facts most favorable to Levandoski. Levandoski testified he would have sought a salvage title within thirty to sixty days if Kelly had not asked him to keep the van. (*See id.* at 164–66.) Accordingly, the evidence supported this instruction.

Final instruction seventeen stated:

You are instructed that it is the law in Indiana that an attorney, of a disclosed client, who actively seeks another's services in connection with litigation and enters into a contract for the performance of those services is personally liable for those costs unless the attorney expressly disclaims such responsibility to the provider of the services.

(*Id.* at 191–92.)

Kelly's objection to this instruction was that it was based on *Boesch*, 712 N.E.2d 1061, which Kelly believes is not relevant to Levandoski's claim against Kelly. For the reasons discussed above, we disagree. Kelly contacted Levandoski and identified himself as the Browns' attorney. Kelly asked Levandoski to keep the van and to send the bills for storage to Kelly. Kelly did not expressly disclaim his responsibility for the bills, but rather told Levandoski he would be paid when the case was over. Those facts support a possible recovery for Levandoski under the theory of *Boesch*, and the trial court did not err when it gave that instruction.

## CONCLUSION

We cannot say as a matter of law Kelly's statements to Levandoski could not have created a contract for services. Kelly's request that Levandoski keep the van because Kelly needed it for litigation purposes was a request for services in connection with litigation. The trial court did not err when it excluded portions of the testimony of Kelly's expert witness, and the evidence supported the trial court's instructions. As Kelly has not demonstrated error, we affirm the judgment of the trial court.

Affirmed.

DARDEN, J., and SHARPNACK, J., concur.