

FILED

Mar 01 2019, 7:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck &
Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Heidi K. Koeneman
Beckman Lawson, LLP
Fort Wayne, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Sherry L. Barrand,

*Appellant-Petitioner,*

v.

Gary W. Martin,

*Appellee-Respondent*

March 1, 2019

Court of Appeals Case No.
18A-JP-1796

Appeal from the Allen Superior
Court

The Honorable Daniel G. Heath,
Senior Judge

Trial Court Cause No.
02D07-1607-JP-554

**Baker, Judge.**

[1] Sherry Barrand (Mother) filed a petition to establish child support from Gary Martin (Father) for their child, M.S.M. (Child). The trial court ordered Father to pay an amount to which the parties had purportedly agreed. Father filed a motion to correct errors because the amount he was ordered to pay did not account for the Social Security retirement (SSR) benefits Child was already receiving based on Father's retirement. The trial court granted Father's motion in part, reducing the amount of Father's child support obligation. Mother now appeals, arguing that the trial court erred by disregarding the parties' purported agreement and by ordering an incorrect effective date for the child support obligation. Finding no error, we affirm.

## Facts[1]

[2] Mother and Father were in a relationship but not married[2] when Child was born in 2004. Mother was granted sole legal custody of Child. Father acknowledged paternity and signed a paternity affidavit. Shortly after Child's birth, Father established an approximately $100 weekly allotment to be taken from his paycheck to provide for Mother and Child; two years later, he increased the weekly amount to approximately $150. In the ten years following Child's birth, in addition to the weekly allotments, Father paid for many things

---

[1] We commend and thank the trial court for its thorough and exceptionally well-reasoned and well-cited order.

[2] The parties testified that they were not officially married but that they had had a ceremony, exchanged a ring, and took a honeymoon together. For consistency with the evidence, the trial court considered the SSR benefits paid to Mother as Father's spouse and to Child in resolving each parent's child support obligation. We will do the same.

for Mother and Child, including food, clothes, furniture, a new dryer, roofing for Mother's home, a used car for Mother, health insurance for Mother, medical care for Mother when she had cancer, and Child's daycare costs.

[3] In 2014, Mother and Father separated. That same year, Father retired and began receiving SSR benefits. Mother then began receiving SSR spousal and dependent child benefits. Initially, she received $1,151 per month; the amount later increased to $1,173 per month.

[4] On July 11, 2016, Mother filed a petition to establish child support. She then withdrew her petition without explanation. On July 5, 2017, Mother filed another petition to establish child support. On January 19, 2018, an initial child support hearing took place. During the hearing, the parties stipulated to a child support obligation from Father of $180 a week effective January 1, 2018; the parties signed a child support obligation worksheet to that effect. The trial court did not ask the parties to affirm their agreement on the record, and the parties did not sign an agreement.

[5] Also during the hearing, Mother's counsel stated that "[t]here's also information for the Court to consider with respect to payments during the period of time – from the date of birth on forward, as well as Social Security retirement benefits that were paid." Appellant's App. Vol. II p. 11. Father's counsel stated, "so the Court is aware, my client does have Social Security benefits that are going to the child, at this point in time, over and above what we've agreed." *Id.* at 15-16. Toward the end of the hearing, the trial court

asked, "So then we've got a stipulation as to support going forward; is that right?" *Id.* at 16. Father's counsel replied, "From January 1st of 2018 going forward, your Honor, yes." *Id.*

[6] The trial court took at face value Father's counsel's statement about support going forward, and on February 14, 2018, the trial court issued an order requiring Father to pay child support of $180 per week, effective January 1, 2018, to be collected by the State. The order did not refer to the SSR benefits. On March 5, 2018, Father filed a motion to correct errors, which stated, in relevant part:

> 1. In response to an Order of the Court issued on February 14, 2018, the Respondent and Petitioner stipulated to receiving $180 a week in child support effective January 1, 2018.
>
> 2. The intent of the parties further agreed that they would continue receiving a Social Security derivative payment being direct deposited to the Petitioner's bank account in the amount of $1173.00 a month which exceeds the Respondent's support obligation. The Respondent has made regular payments into a joint bank account for [Child] since January 2005.

Appellant's App. Vol. II p. 27. The motion did not explicitly identify an error in the trial court's order.

[7] On May 25, 2018, a hearing on Father's motion to correct errors took place. Father contested the weekly child support obligation of $180 in addition to the SSR benefits Child was receiving because those benefits already exceeded the amount of Father's child support obligation. Mother argued that the parties

intended for Father's weekly child support obligation to be in addition to and separate from the SSR benefits.

[8]     On June 26, 2018, the trial court issued a new order, granting Father's motion in part and denying his motion in part. The trial court concluded that the parties' purported agreement was vague and ambiguous and may have been contrary to Indiana law regarding SSR benefits; the trial court then concluded that it had erred in its February 14, 2018, order by not considering the SSR benefits when ordering Father to pay child support of $180 per week. The trial court found, in relevant part, as follows:

    A. Findings of Fact

    1. At the prior hearing held on January 19, 2018, the parties, by counsel, acknowledged to the Court, in relevant part, that they had reached agreement regarding Mr. Martin's child support obligation.

    2. The parties purportedly agreed that Mr. Martin's child support obligation would be $180.00 per week (consistent with Exhibit A – the parties' Child Support Obligation Worksheet) effective January 1, 2018, forward.

    3. When discussing the application of social security benefits to Mr. Martin's child support obligation, [Mother's counsel] posited, "there's also information for the Court to consider with respect to payments during the period of time – from date of birth forward, as well as Social Security *retirement* [Court's emphasis added] benefits that were paid.

4. In addition, [Father's counsel] advised "so the Court is aware, my client does have social security benefits that are going to the child at this point in time, over and above what we've agreed."

\*\*\*

6. Accordingly, the issues of arrearage support prior to January 1, 2018, . . . remained in dispute.

7. The Order of the Court entered on February 14, 2018 for the hearing held on January 19, 2018, did not address or mention Mr. Martin's social security benefits received by Ms. Barrand.

8. Neither the parties (at the January 19, 2018, hearing) nor the Court (in its February 14, 2018, Order) explained why current child support would begin on January 1, 2018, rather that [sic] the date of filing of Ms. Barrand's pleadings.

\*\*\*

10. Thereafter, consistent with the Court's Order entered on February 14, 2018, the State of Indiana administratively issued an Income Withholding Order for $180.00 withheld by Mr. Martin's contract employer without consideration of Mr. Martin's social security benefits received by Ms. Barrand.

11. After receiving Mr. Martin's Motion to Correct Errors filed on May 5, 2018, the Court added to the confusion by issuing its Order of the Court entered on March 13, 2018, presuming, in error, that Mr. Martin's social security benefits were social security *disability* benefits governed by statute (not social security *retirement* benefits) and went on to provided [sic] erroneous instructions to the parties in preparation for the hearing on Mr. Martin's Motion to Correct Errors also set on May 25, 2018.

12. At the hearing held on May 25, 2018, Mr. Martin, by counsel, argued that [counsel's] comment "over and above what we've agreed" was meant to inform the Court that Mr. Martin's social security benefits would more than satisfy Mr. Martin's child support obligation of $180.00 per week with the overage paid toward any arrearage child support owed or if no arrearage support was owed, would be a gift to [Child].

13. At the hearing held on May 25, 2018, the State admitted that its traditional manner of calculating child support in this case would be to add these social security benefits to Mr. Martin's income and then offset the child support amount shown on the Child Support Obligation Worksheet with the derivative benefits paid to the child.

14. To the contrary, Ms. Barrand, by counsel, argues that the attorneys are presumed to know the law and taken literally, Mr. Martin, by counsel, and without objection by the State, agreed that Mr. Martin would pay $180.00 per week to Ms. Barrand in addition to the $270.69 per week social security retirement benefit.

B. Conclusions of Law

1. The Court concludes that the parties' agreement to offset (or not) Mr. Martin's weekly child support obligation with the social security retirement benefits paid to Ms. Barrand is vague and ambiguous.

2. The Court concludes that the parties' agreement, if any, may be contrary to Indiana case law regarding social security retirement benefits.

3.  The Court concludes that the parties did not have an agreement at the hearing held on January 19, 2018.

4.  The Court concludes that the parties' reasons for the deviations from Indiana statutory requirements regarding child support amount, payment method, and effective date were not provided to the Court by the parties.

5.  The Court concludes that, in error, its Order entered on February 14, 2018, did not include the social security retirement benefits referred to by [the parties' attorneys] at the hearing held on January 19, 2018.  Further, the Court's Order did not include explanations for the parties' deviations.

Appealed Order p. 3-4 (emphasis original and footnotes omitted).  The trial court then recalculated Father's weekly child support obligation, preparing a demonstrative exhibit to calculate the impact of the SSR benefits received by Mother on Father's support obligation.  The trial court exercised its discretion and provided a credit to Father for the SSR benefits received by Mother.  The trial court stated:

1.  After considering the relevant case law and the facts in this case, the Court established Mr. Martin's child support obligation at $57.00 (rounded from $57.28) per week consistent with the Court-prepared Child Support Obligation Worksheet . . . .  Mr. Martin's child support obligation is calculated as follows: $268.00 per week (Mr. Martin's *pro rata* child support obligation including [Child's] *pro rata* portion of [Child's] healthcare premium) minus $135.34 (a credit, offset, or deviation for SSR spousal benefits paid to Ms. Barrand) minus $75.38 (for [Child's] healthcare insurance premium).

*Id.* at 9 (italics original).

Regarding the effective date of Father's child support obligation, the trial court found that:

> 9. Given the circumstances of this case that the Barrand-Martin family was intact until 2014 and Mr. Martin provided financial (actual and in-kind) support for [Child] well prior and after the separation, the Court concludes that Ms. Barrand is not entitled to retroactive child support beginning at [Child's] birth on March 26, 2004, to when [Child's] parents separated in 2014.
>
> 10. Between 2014 when [Child's] parents separated and July 11, 2016, Mr. Martin informed Ms. Barrand of the SSR benefits available to her and [Child] based on Mr. Martin's age, retirement statute, and work history. Ms. Barrand applied and received spousal and dependent child SSR benefits in the amount of $270.69 per week.
>
> 11. Accordingly, . . . the Court concludes that Barrand is not entitled to retroactive support between 2014 when Ms. Barrand and Mr. Martin separated through July 11, 2016.
>
> 12. Between July 11, 2016, and July 5, 2017, Ms. Barrand withdrew from the IV-D program, cancelled the evidentiary hearing, and did not reschedule an evidentiary hearing on her pleading until after she filed her second pleading on July 5, 2017. Ms. Barrand provided no excuse for this delay of nearly one (1) year.
>
> 13. Accordingly, the Court finds that Mr. Martin's child support obligation shall be effective July 5, 2017, the date of filing for Ms. [Barrand's] second petition for child support.

*Id.* at 8-9 (footnote omitted).  Mother now appeals.

# Discussion and Decision

Mother appeals the trial court's ruling on Father's motion to correct errors, arguing that the trial court erred by finding that Mother and Father did not have an enforceable agreement regarding Father's weekly child support obligation and by finding that Father's obligation dated back only to Mother's 2017 petition.  A trial court's ruling on a motion to correct errors is reviewed for error.  *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind. 2003).  An error occurs if the trial court's decision is against the logic and effect of the facts and circumstances or if the trial court misapplied the law.  *Brown v. Brown*, 979 N.E.2d 684, 685 (Ind. Ct. App. 2012).

# I.  Indiana Child Support Guidelines

Before reaching the substance of this appeal, we are inclined to discuss the effect of Social Security benefits on child support obligations.  The Indiana Child Support Guidelines distinguish between SSR benefits and disability benefits:  a trial court *may* use its discretion to credit SSR benefits to a noncustodial parent's child support obligation, while disability benefits *must* be applied as a credit.  Specifically, the Guidelines provide in relevant part:

> 5.  Effect of Social Security Benefits.
>
> > a.  Current Support Obligation

1. Custodial parent: Social Security benefits received for a child based upon the disability of the custodial parent are not a credit toward the child support obligation of the noncustodial parent. The amount of the benefit is included in the custodial parent's income for the purpose of calculating the child support obligation, and the benefit is also a credit toward the custodial parent's child support obligation.

2. Noncustodial parent: Social Security benefits received by a custodial parent, as representative payee of the child, based upon the earnings or disability of the noncustodial parent shall be considered as a credit to satisfy the noncustodial parent's child support obligation as follows:

> i. Social Security Retirement benefits may, at the court's discretion, be credited to the noncustodial parent's current child support obligation. The credit is not automatic. The presence of Social Security Retirement benefits is merely one factor for the court to consider in determining the child support obligation or modification of the obligation. *Stultz v. Stultz*, 659 N.E.2d 125 (Ind. 1995).

> ii. Social Security Disability benefits shall be included in the Weekly Gross Income of the noncustodial parent and applied as a credit to the noncustodial parent's current child support obligation. The credit is automatic.

> iii. Any portion of the benefit that exceeds the child support obligation shall be

considered a gratuity for the benefit of the child(ren), unless there is an arrearage.

Ind. Child Support Guideline 3G(5).

[12] Our Supreme Court has provided that

in those situations where the trial court concludes that it is appropriate to give a Social Security recipient parent credit for Social Security benefits paid directly to a child, the trial court should in fact include the amount of the benefits in the recipient parent's adjusted income for purposes of calculating the parents' relative share of the total child support obligation.

*Stultz v. Stultz*, 659 N.E.2d 125, 126 n.2 (Ind. 1995) (holding that non-custodial parent was not entitled to offset child support obligation by the amount of SSR benefits paid directly to his children as a result of his retirement). Our Supreme Court later fully endorsed a flexible methodology that allows a trial court to use its discretion when crediting a non-custodial parent's child support obligation. As the Court explained:

We recognize that determination of how to apply a child's receipt of Social Security Retirement benefits in a child support order can be complicated, and present challenges to a trial court—and not applying those benefits poses the risk that the trial court may fashion a child support order under which the children of divorcing parents enjoy a standard of living much greater than that which they enjoyed pre-dissolution. . . .

And we likewise agree—and our Child Support Guidelines now reflect—that a mechanical application of the trial court methodology in *Stultz* (i.e., a strict denial of credit) would be

improper, and the opinion should be applied to provide for the exercise of the trial court's discretion. Utilizing such a methodology will promote the aims of the Support Guidelines, will treat similarly situated families the same, and will provide for children receiving the same degree of support post-dissolution that they had when their parents' marriage was intact.

*Johnson v. Johnson*, 999 N.E.2d 56, 62 (Ind. 2013) (quotation marks and citations omitted).

[13] In the instant case, the trial court, having considered several ways in which the SSR benefits could have an impact on Father's child support obligation, ultimately followed the flexible methodology endorsed in *Johnson* and reflected in the Child Support Guidelines. We urge all trial courts faced with this issue to also carefully consider the possible impact of SSR benefits when determining whether to provide a credit to a non-custodial parent for his or her child support obligation.

# II. The Agreement

[14] Mother first challenges the trial court's finding that she and Father did not have an enforceable agreement regarding Father's child support obligation. According to Mother, the parties clearly and unambiguously intended and agreed for Father to pay child support of $180 per week in addition to the SSR benefits Child was receiving, even if those benefits exceeded Father's support obligation.

[15]    The existence of a contract is a question of law.  *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012).  The basic requirements of a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties.  *Id.*  "For an oral contract to exist, parties have to agree to all terms of the contract."  *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005). If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed.  *Id.*

[16]    During the January 19, 2018, hearing, Mother and Father discussed their purported agreement, which had not been put into a formal writing.  Mother contends that the child support obligation worksheet submitted by the parties showing a child support obligation of $180 a week—without consideration of the SSR benefits—reflects Mother and Father's intent and agreement.  But during that same hearing, counsel for both parties indicated that the trial court should consider the SSR benefits in its order.

[17]    Specifically, Father's counsel stated that the SSR benefits available were "over and above what we've agreed."  Appellant's App. Vol. II p. 16.  According to Mother, this statement was an acknowledgement that the SSR benefits should be considered gifts to Child; according to Father, the statement was meant to inform the trial court that the SSR benefits would more than satisfy his child support obligation.  In short, the parties saw and continue to see an essential term of their agreement differently, and as a result, there was no mutual assent, and no agreement was formed between them.  The trial court, therefore, did not err by finding that because Mother and Father had different understandings of

their purported agreement, they did not have an enforceable agreement regarding Father's child support obligation.

## III.  Effective Date

Mother also objects to the trial court's finding the effective date of Father's child support obligation to be July 5, 2017, the date Mother filed her second petition for child support.  She argues that the appropriate effective date is the date of Child's birth or, in the alternative, the date of the filing of Mother's first petition in 2016.

Indiana Code section 31-14-11-5, which governs the date for a support obligation to begin, provides:

> The support order:
>
>> (1) *may* include the period dating from the birth of the child; and
>>
>> (2) *must* include the period dating from the filing of the paternity action.

(Emphases added.)  The term "may" in a statute ordinarily implies a permissive condition and a grant of discretion.  *Tongate v. State*, 954 N.E.2d 494, 496 (Ind. Ct. App. 2011).

Mother contends that Father's child support obligation should date back to Child's birth because Father's financial resources and earning ability were and are greater than Mother's and because Father's financial support through 2014

was voluntary. Yet the statute clearly states that the trial court has discretion to order child support from the period dating from the birth of the child. Here, the trial court, after considering Father's consistent financial support to Child throughout Child's life, exercised its discretion by not ordering Father a retroactive obligation dating back to Child's birth.

[21] The trial court provided clear support for its decision, finding that Mother was not entitled to retroactive support during these time periods:

- from 2004 to 2014 because the family was intact, and Father provided financial support to Child during this time;
- from 2014, when the parties separated, to July 11, 2016, when Mother filed her first petition for child support, because Mother and Child received SSR benefits based on Father's retirement during this time; and
- from July 11, 2016, to July 5, 2017, when Mother filed her second petition for child support, because Mother withdrew her first petition, cancelled the evidentiary hearing, and did not reschedule it until she filed her second pleading on July 5, 2017.

Mother points to no specific error with the trial court's reasoning, nor do we find one.

[22] Mother contends that, in the alternative, the trial court erred by making the effective date of the support obligation the date of her second petition to establish child support, rather than the date of her first. The trial court considered whether Mother was entitled to retroactive support dating back to the filing of her first petition in 2016 and concluded that she was not because Mother did not follow procedure with that petition. As the Chronological Case Summary reveals, Mother ultimately did not pursue support action under that

petition. A summons was not filed for, and Father was not served with, this petition. Therefore, Mother's action under that first petition did not legally commence. *See* Ind. Trial Rule 3 ("A civil action is commenced by filing with the court a complaint or such equivalent pleading or document as may be specified by statute, . . . and, where service of process is required, by furnishing to the clerk as many copies of the complaint and summons as are necessary.").

[23] When Mother filed her second petition, a summons was also filed for service of process, and Father was served with the second petition. Accordingly, under the statute, the effective date for the support order had to date back to the filing of the second petition but did not have to date back to the filing of the first. The trial court did not err on this basis.

[24] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.