## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2019, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Larry C. Thrush | Jay A. Rigdon |
| Wabash, Indiana | Warsaw, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Hoover d/b/a Quality Electric, Inc., *Appellant-Plaintiff,* v. John Schuler, *Appellee-Defendant.* | April 2, 2019<br><br>Court of Appeals Case No. 18A-SC-2293<br><br>Appeal from the Wabash Superior Court<br><br>The Honorable Karen A. Springer, Judge Pro Tempore<br><br>Trial Court Cause No. 85D01-1806-SC-223 |

**Friedlander, Senior Judge.**

[1]     Larry Hoover appeals the denial of his motion to correct error. This matter stems from a small claims action Hoover initiated against John Schuler ("J.P.") to recover damages for alleged breach of contract, existence of an account

stated, and unjust enrichment.[1] Hoover presents three issues for review, which we consolidate and restate as whether the trial court erred in denying his claim. We affirm.

[2] The facts of this case are as follows. Hoover is the sole owner of Quality Electric, Inc. ("Quality Electric"), an Indiana corporation with its principal office located in Wabash, Indiana. Quality Electric provides heating, air conditioning, electrical, and plumbing services.

[3] J.P. and his two sons, Mike and Scott Schuler, farmed together and also operated Pro-Ag, LLC, a farm shop located in North Manchester, Indiana. The farm shop was where all of the farm equipment was repaired and readied for use on the farm.

[4] Scott Schuler is married to Hoover's daughter. Hoover and J.P. have known each other for at least thirty years.

[5] One afternoon, in 2012, J.P. was at the shop when a storm developed. The wind blew a thirty-six-foot wide overhead door onto the shop's roof, causing substantial damage. That same day, Scott contacted a local crew to remove the door and Quality Electric to perform electrical services. Quality Electric employees completed the work in September 2012. In August 2013, Quality Electric performed additional electrical services for the shop, specifically:

---

[1] In Wabash County, small claims actions are filed in the Wabash Superior Court.

"added more lighting to the shop and did some other . . . miscellaneous work[,] adding receptacles and [a] switch." Tr. Vol. II, p. 10.

[6] At some point, a conflict arose between J.P., Mike, and Scott because of "intra-family disputes," and on September 11, 2014, Scott sued Mike, J.P., and the LLC in the Wabash Circuit Court. Appellant's App. Vol. II, p. 5 (internal quotations omitted). On March 18, 2015, the trial court appointed receivers.

[7] The parties eventually submitted to binding arbitration, which resulted in an arbitration award issued on July 14, 2017. The arbitration panel found, among other things, that the farm shop was located on J.P.'s land and was deemed J.P.'s asset. The parties subsequently entered into a settlement agreement that incorporated the arbitration award. The agreement was approved by the trial court and ordered implemented on February 20, 2018.

[8] In August 2017, while the lawsuit was still pending and the matter was in receivership, Hoover sent to the receivers the 2012 and 2013 invoices for the work performed at the farm shop. The receivers declined to pay the invoices, finding that the work predated the receivership. In their Thirtieth Report of Receiver and Request for Compensation, the receivers reported the following to the trial court regarding the invoices:

> Both of these jobs were for work that occurred several years ago and prior to the establishment of the Receivership. The Receivers called Larry Hoover with Quality Electric to inquire about these invoices. Larry indicated that the invoices were indeed for work done on J.P.'s Farm Shop several years ago. He said that at the time the work was done he thought that the shop

was owned by Scott, since it adjoined Scott's property. Larry said he sometimes does not charge Scott for work he does for him, and these two projects were some of those instances. However, now that he is aware that J.P. owns this building, he thought it was necessary to bill for these jobs.

Because this work occurred prior to the establishment of the Receivership, the Receivers do not intend to pay these invoices out of Receivership funds unless instructed to do so by the court or unless all parties agree to this course of action. Furthermore, these invoices were remitted to the Receiver after J.P.'s Shop was returned to J.P. and removed from Receivership control. Thus, without instruction from the court or agreement from the parties to pay with Receivership funds, the Receivers intend to pass these invoices along to J.P. and notify Quality Electric of this and their stance that the invoices should be addressed to either whomever ordered the work done or J.P., since he is the owner of the building upon which the work was completed.

Exhibits Vol. III, p. 59.

[9]     Hoover then sent the invoices to J.P. for payment. When the invoices went unpaid, Hoover filed suit in small claims court in June 2018. A bench trial was held on Hoover's claim on July 13, 2018, at the conclusion of which the trial court orally ruled in favor of J.P. On July 20, 2018, Hoover filed a motion to correct error. On August 22, 2018, the court heard arguments on the motion and entered its order denying the motion, which reads in pertinent part as follows:

10.     Hoover blames a former secretary for the almost five (5) year delay to submit Plaintiff's Exhibit 1 [(the 2012 invoice)] and the more than four (4) year delay to submit Plaintiff's Exhibit 2

[(the 2013 invoice)]. Hoover claimed that a file had been "filed without being billed" and was not discovered until "they asked for a job to be done at one of the farms where they were going to split the house meter from the farm operation meters."

11.    . . . Hoover offered no explanation as to why the "misfiling" was not discovered when Quality Electric was asked to perform the second job almost a year later. Hoover's explanation of why it took more than four years after the completion of the second job to submit a bill for either of them fell short.

12.    A more plausible explanation became apparent when JP admitted Defendant's Exhibit B over Plaintiff's hearsay objection. Defendant's Exhibit B is the Thirtieth Report of Receiver and Request for Compensation . . . ("Receiver's Report"). . . .

* * * * *

22.    This Court simply cannot conclude that Quality Electric is entitled to recover its charges for the services and supplies belatedly billed under the facts of this case. The Receiver's Report offers the most credible evidence as to why Hoover never submitted the bills in question until August 31, 2017. The totality of the circumstances lead [sic] this Court to believe that the omission was an intentional act on Hoover's part as opposed to a mistake created by former office staff. The credible evidence leads to the conclusion that Hoover never intended to bill for those services until he learned that his son-in-law was divested of any ownership interest in the Farm Shop Improvements by the Arbitration Award. Quality Electric's cries of unjust enrichment fail to move this Court simply because it was J.P. instead of his son/Hoover's son-in-law who was awarded the Farm Shop Improvements. This Court rejects Plaintiff's contention that

[*Auffenberg v. Bd. of Trs. of Columbus Reg'l Hosp.*, 646 N.E.2d 328 (Ind. Ct. App. 1995),] compels a judgment in favor of Quality Electric. To the contrary, it compels a finding that J.P. met any burden that he had under Plaintiff's theory of an account stated or unjust enrichment or something else.

Plaintiff's Motion to Correct Errors filed July 20, 2018 is hereby denied. Judgment remains entered in favor of the Defendant and against the Plaintiff.

Appellant's App. Vol. II, pp. 6, 9. This appeal followed.

[10] The issue is whether the trial court erred in denying Hoover's claim. Hoover specifically maintains the trial court erred in finding that there was no contract between Hoover and J.P. and that J.P. "sustained his burden of proving that the account stated was incorrect." Appellant's Br. p. 4. Hoover also contends the trial court erred in denying his unjust enrichment claim.

[11] Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1067 (Ind. 2006) (quoting Ind. Small Claims Rule 11(A)). Upon review of claims tried by the bench without a jury, we shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We define the clearly erroneous standard based upon whether the party is appealing a negative or an adverse judgment. *Garling v. Ind. Dept. of Nat. Res.*, 766 N.E.2d 409 (Ind. Ct. App. 2002), *trans. denied*. Hoover had the burden of proof at trial on his small claims action. A judgment entered against a party

who bore the burden of proof at trial is a negative judgment. *Id.* On appeal, we will not reverse a negative judgment unless it is contrary to law. *LTL Truck Serv., LLC v. Safeguard, Inc.*, 817 N.E.2d 664 (Ind. Ct. App. 2004). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id.* The judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.* Our deferential standard of review is particularly important in small claims actions, where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A).

[12] An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, express or implied, to pay the balance. *Jackson v. Trancik*, 953 N.E.2d 1087 (Ind. Ct. App. 2011). An agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable amount of time. *Auffenberg*, 646 N.E.2d 328. Failing to object to liability on an account until a suit is filed constitutes failure to object to the account within a reasonable time and supports the inference of an agreement that the account balance is correct. *Id.* Still, the general rule on an account stated is that there must have been "prior dealings between the parties, and after an examination of all the items by each of the parties, they must have mutually agreed upon the items of the account, and that the balance

struck is just and due from the party against whom it is stated." *Bottema v. Hendricks Cty. Farm Bureau Co-op. Ass'n*, *Inc.*, 159 Ind. App. 175, 179, 306 N.E.2d 128, 130 (1974) (internal citations and quotations omitted). It is on this latter basis that we find that Hoover cannot maintain an action against J.P. for breach of contract or prevail on an account stated because he had no contractual relationship with J.P. and was not in privity with him.

[13] The evidence simply does not support a finding that Hoover had a contractual relationship with J.P., and there was no agreement with J.P. that the invoices were correct or an express or implied promise from J.P. to pay the invoices. According to the receivers' report, Hoover told the receivers that at the time the work was performed, he thought Scott owned the shop; sometimes Hoover would not charge his son-in-law for work performed; the projects in question were examples of work for which Hoover would not charge Scott; and Hoover decided "it was necessary" to bill J.P. for the work only after he discovered that J.P. owned the shop. Appellant's App. Vol. II, p. 7. Hoover testified that Scott contacted him and asked that the work be performed at the shop, that Hoover "usually never . . . talked to [J.P.]" about work to be performed at the shop, and that Hoover did not talk to J.P. about the work in question. Tr. Vol. II, p. 14. Hoover did not send any invoices for the work until years later and did so only after he found out that Scott did not own the shop. Scott testified that he was "always the contact person for the day to day stuff and – and the repair work just as [Hoover] said." *Id.* at 23.

[14] Indeed, Hoover also testified that he expected to be paid for the work he performed at the shop; that "these [projects] would not be instances where I would donate the money because it was part of the farming operation;" that he "would never [donate his services] when . . . there was [sic] three different people involved in the farming operation;" and that he failed to send invoices in a timely manner because the paperwork was "misfiled." *Id.* at 16, 17. The trial court, however, disbelieved the testimony. *See generally, McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996) (providing that the trier of fact is free to believe or disbelieve witnesses as it sees fit). Based upon the foregoing, we conclude the trial court did not err in finding no contractual relationship between Hoover and J.P. and no existence of an account stated.

[15] Neither can Hoover recover damages based upon the theory of unjust enrichment. Also called a quasi-contract, the claim "is a legal fiction invented by the common-law courts in order to permit a recovery . . . where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Clark v. Peoples Sav. & Loan Ass'n*, 221 Ind. 168, 171, 46 N.E.2d 681, 682 (1943). Our courts articulate three elements for these claims: 1) a benefit conferred upon another at the express or implied request of this other party; 2) allowing the other party to retain the benefit without restitution would be unjust; and 3) the plaintiff expected payment. *Kelly v. Levandoski*, 825 N.E.2d 850 (Ind. Ct. App. 2005), *trans. denied*. Put another way, "a plaintiff must establish that a measurable benefit has been conferred on the defendant

under such circumstances that the defendant's retention of the benefit without payment would be unjust. One who labors without an expectation of payment cannot recover in quasi-contract." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991).

[16] Here, the evidence clearly shows that J.P. did not request the electrical services, and Hoover did not expect payment for the work. Hoover sought payment only after discovering that his son-in-law did not own the shop. As such, he cannot recover on the theory of unjust enrichment.

[17] We find the trial court did not err when it denied Hoover's claim. The judgment of the trial court is affirmed.[2]

May, J., and Pyle, J., concur.

---

[2] We decline to address J.P.'s counterclaim alleging the trial court erred in refusing to admit into evidence his affidavit.